Good morning, ladies and gentlemen. Our first case for this morning is Visteon Corporation v. National Union Fire Insurance. Mr. Plews. May it please the court. I'm a bit at a disadvantage here this morning because your hearing assisting system is out. I have my hearing exam, but normally I use an assisting system. So if I miss a question, it may well be that I didn't hear what you said. If you would repeat it or speak loudly, I'd appreciate it. The court here made two fundamental errors. The most important of which is… Why isn't there a form selection clause in the insurance contract? That's a very good question. I think that insurance companies have historically not wanted to include form selection clauses in the contracts. They're form contracts. They prepare them. They didn't include one. Why not? You'd have to ask them. It seems ridiculous to go through all this rigmarole of choice of law when you think that these are sophisticated enterprises, large enterprises. Why don't they write in a form selection clause instead of making the courts… The way insurance is purchased in the modern world just hasn't involved that question. It's involved questions of limits and those sorts of issues, but there's no real negotiation in terms of the policies. But what we have developed in Indiana is using the restatement factors, 188 and 193 sections, and looking at those. And the court below weighed those factors and found that the place of performance favored Indiana, but found that the place of the domicile of the parties and the principal location of the insured risk favored Michigan. So I'm not at all sure that even that much is right. I thought the court came to a very sensible result, considering that from an ex-ante point of view, nobody knew where was any particular kind of risk, whether a pollution risk, whether some other kind of risk covered by this kind of policy was going to come up. And not knowing that, it seems to me under your rule, the entire contract would be governed by the law of whichever state randomly happened to be the first place something happened, which makes no sense. Well, here's how I think this breaks down. The first point is on the principal location of the insured risk, we presented really unanimous case law from around the United States that says where you have a company like this one with operations in many, many different locations, there isn't a principal location of the insured risk. No, that's what makes it worse. Pardon? You're selling all over the world, right? Exactly. Selling and manufacturing, more importantly, all over the world. Well, what if you're sued in Outer Mongolia or something like that? So Outer Mongolian law applies? What that means is you look at that factor becomes less important, it's unimportant, it's indeterminate, and so other factors become more important. Why not the fact that the world headquarters of Vistian was in Michigan and the people making the decisions about what kind of insurance they wanted to buy were in Michigan? It struck me that it was eminently reasonable to pick Michigan law. The domicile is one place where the headquarters is one of the factors taken, but you look at all the parties. But what's the sense of it? All these factors, it just makes a great mush of this. What is the reason for not following what Judge Wood was saying, which is, yes, this is where the company is centered, and this is where it decides what kind of insurance to buy, and if it doesn't like Michigan law, well, it can negotiate for a form selection clause somewhere else. The reason we don't require the policyholders to specify other law is that we look at, because that wasn't part of what the contract that was formed was. Parties didn't address that. It wasn't part of their form. Well, if you didn't want Michigan, Michigan is your state, but if you didn't want Michigan, you negotiate for a clause saying, you know, some other state's law. But again and again, Indiana has adopted 188 and 193, and in cases in which the headquarters— Well, look at what Indiana has done. The question is, why isn't the sensible result is to have a form selection clause in all these contracts? Because— If you don't have the sensible result, but still you're not happy with Michigan, even though Michigan is your state, you're not happy with their law, so you negotiate for a different body of law, right? Or you alter the contract so that the Indiana approach becomes the rule governing your contract. Indiana could have adopted a headquarters selection rule. It didn't. It adopted looking at all those factors. But I'm talking about what Indiana does. I'm talking about what you should be doing as a Michigan company, somehow not happy with one provision of Michigan insurance law, so negotiate for a different provision. But when we're faced with a situation where there hasn't been a choice of selection of law, these are the factors we look at. No, we understand that, and we certainly also understand that in a diversity case, the court under Claxon is supposed to look at the choice of law principles of the forum state, which it does, but that dips you into this list of factors from the restatement, since that's what the Indiana courts say they're doing, and even you say most of them are somewhat indeterminate. Yes. And it's essentially a very unhelpful approach, but one which I think it's hard to say that the district judge was wrong to say that Michigan law, on the whole and by and large, makes the most sense, especially when you understand that one thing is clear about Indiana. It requires a single law for the contract. It doesn't want one law for the contract when there's a pollution leak in Connersville and a different law for the contract if a Texas facility has a leak or a Mexican facility blows up or something. So you have to find one law, and you have to ask, well, what at the time of the entering into this contract would that law have been? And it seems to me that the district court's careful analysis of all of these circumstances of the contract rationally points to Michigan. Well, let me see if I can address that, because I'm trying to do it by going through the various factors that are actually articulated by the Indiana courts and showing I think that really the principal location ensured risk is the most important factor typically. Well, you argue that in your brief. You certainly argue that in your brief. But the district court thought it was very important that the plurality of the facilities were in Michigan, that the technical centers were in Michigan, that the headquarters was in Michigan. And there might be other parts of Michigan law that you like. I mean, it strikes me that this is so short-sighted. Eighty percent of the manufacturing facilities were not in the United States or outside the United States. No, I understand that. When you look at the number of employees, the vast number of employees, the majority of employees are outside the United States. Well, maybe it should have been German law. Let me turn to the reasons why I think it still makes sense. After all, what the choice of law really is, I think, it's not a parlor game. It's not counting factors. It's some way to try to determine what makes the most sense. In the particular case you have in front of you, which jurisdiction's law should apply because the state has the greatest interest in it, has the most connection to it. And then so you have to look at the parts of Section 6, which are what are connected and lie behind 188 and 193, to try to identify which state that is. And I think here, clearly, it's Indiana. But you can't say that because the accident happened years after the insurance agreement was made or the groundwater seepage happened to be in Indiana. As you point out, this is a broad insurance policy. It insures facilities all over the globe. Different things could have happened in different places. As it happens, this suit is about the release of trichloroethylenes in Indiana, but it could have been anything. That's fortuitous. But in trying to select which jurisdiction's law makes the most sense to apply, you look also at where the effect is felt. So are you committing to a principle that the substantive law of whatever state in which an accident occurs or country in which an accident occurs, that's the law that should apply? What we're saying is that I'm dealing with this case. No, is that your position? This case only. It could be Indiana. It could be Texas. It could be North Korea. It could be anywhere. And you would say, well, their principles of conflict of laws, assuming they're as mushy as ours, would always point to the state of the accident. Yes. There is nothing unusual in the selection of Indiana law here. When you look at it, it's Indiana's choice of law principles. You're not following my question. I'm not just obsessed with Indiana. You're announcing a principle that wherever the case, if the case is brought in the jurisdiction in which the accident occurred, then the substantive law of that state is going to apply unless the choice of law principles of that jurisdiction are radically different from ours. First of all, many states have adopted that, specifically in the environmental context. But what we're saying is that we're not saying we ask you or ask you to disregard Indiana's application of 188 and 183. That would still apply. We say in this case the place of performance is the only factor that stands out. But let me ask you this. And that's the standard that ought to apply. And so in this case the answer to your question would be yes, it would be Indiana law. But it would be true anywhere. You always think the place of performance is the big thing. That's the important factor. Yes, I'd say that's the important part in this case. That would be true whether it's North Korea, whether it's Indiana, right? Let me explain why. What would the difference be? North Korea or Indiana? Well, Indiana's where the reason Indiana has a greater interest. Well, maybe if the accident occurs tomorrow in North Korea, should we say that North Korea's tort law, they have tort law. If that were the only factor that stood out among these factors and there was no other connection, then place of performance is a part. And it makes sense looking always at the principles in Section 6, too. I need you to answer this other question, though. We have this case. Suppose we agreed with you on this case because the accident occurs or the seepage occurs in Connersville, Indiana. And next week there's an accident in Michigan and one of the plants in Michigan has a release of some toxic pollutant. Do you think a different law governs the very same contract for the next week accident? Or does the contract one day get governed by Indiana law and next week it's governed by Michigan law and the following week Mexican law? No, it would be one state's law. So, Indiana, even though the place of the occurrence for the second occurrence is different, you think Indiana law, once you've gotten the first contract, contact in Indiana, then Indiana has occupied the field, so to speak. If those are, well, yes. You wouldn't go back and relitigate every time, the new time. That makes no sense at all, does it? Well, I think it does, Your Honor. I mean, you have to evaluate the choice of law in the context in which it arises, including all the factors that are in 188, 193. So it would bind future determinations. If they both arose at the same time in the same litigation, then you'd be looking at a place of performance that was indeterminate and you'd have to look at other factors. Right, but I'm saying that in a business like Visteon's business, it may be a situation where there isn't one and only one time that there's an accident within the meaning of the policy and occurrence within the meaning of the policy, and yet you're really saying first-in-time rules, no matter how remote the connections of that state to later occurrences under the same insurance arrangement. Well, you can only determine which state's law applies one time. I think it would be res judicata to subsequent determinations of which state's law would apply to a contract. So don't you want a state that makes sense for the contract as a whole, not just linked to the fortuity of where the first accident happens? Well, I don't think it's fortuitous where the first accident happens. I think that reflects actual risk. In fact, if you look at the Dana and Summit cases, you see there the courts talking about prospective application of place of performance and looking at facilities, but when it gets down to it, they also look at where the claims arose, where the risks actually were encountered and where they actually are impacting, and that's also an aspect of place of performance that you have to look at. But you only do it one time. I don't think it's an untenable system to have it. As I said, if you have more than one claim pending, then you have an indeterminacy of place of performance, and other factors may outweigh. Let me explain something to you. This case is a little unusual in that policies are in 2000, 2000 to 2002. By that time, there's a history there. They know that there's a risk of solvent manufacturing plants, plants that use solvents in their operations. They know that also in the end, law would be favorable to covering those kinds of claims. We wanted to explore. One of the factors that you look at in the choice of law is the source of the premium, which here was a flat premium. Discovery was blocked as far as what National Union knew at the time they issued these policies about Visteon's operations, about where the manufacturing operations were really centered. Remember that 80%, even though 80% of the manufacturing facilities, that may not tell the whole story because 80% is just... But you know much more about this, surely, about your business than National Union Fire Insurance Company. I'm sorry? You know much more about your business than the insurance company does. Well, that's true. Hopefully. But they're selling the policy under risk as well. And so they know what cases they've been involved in involving those solvents as we cite in our brief. They know what the law of Indiana is for the same reason. I don't see why that helps you because at least if my reading of the briefs is correct, you had 63 insured facilities in the United States alone, 43 of which were in Michigan, 20 were in other states, and on manufacturing facilities you had 14 in Michigan, 3 in Indiana. Then there are other places. And then, of course, there's the rest of the world. So I'm not sure that discovery into whether National Union knew that there were trichloroethylenes coming out of the Connersville plant matters at all. Well, it does in terms of what their understanding is approaching the point in time the contract was entered, which is 2000-2002. It's not like many of the other cases are much earlier time frames. But I want to point out the scope of the facilities just to give you an idea of why Michigan isn't the principal location of insured risk. If you look at the employees involved in sales, which is a common way that insurers determine risk, and Dana, you see that reference, so are sales premium companies. In sales, the non-North American employees, 991. The North American employees, that's including Canada and Mexico as well as the United States, only 74. In technical people, those are the people that test the products, design them, put them together. And this is in the time frame we're talking about, 2000-2002, 1,606 non-North American employees to 69 North American employees in technical and sales issues. That shows you that the principal location of insured risk just isn't there. It's just not in Michigan. Even though the number of – if you limit it only to the United States – You're talking about all of North America, and now you're assuming everybody in North America is in Indiana? You can't assume that everyone in North America is in Indiana because that's not what the facts show. No, but what I'm saying is that the company's risk was centered was not North America, was not Michigan, and therefore you have to go to the other factors and you look at only the places of performance, as Indiana defines it as the one that – And it's not something that doesn't make sense. Indiana had a major manufacturing facility in there. It's a major portion of – a major interested party and has the injured party there, has Mr. Heap, who's also the party that's interested in this matter and has an insurable interest, a protected interest that he's allowed to see how the insurance would apply to his claim. All of those factors. And again, these things often turn on very small margins and they turn on little weights one way or the other. And it's not at all untoward. And many states have adopted a system of law selection that turns on where the claim is located, particularly in this kind of environmental claim. And Indiana doesn't have that system. I acknowledge that. It doesn't do a direct set law of the site, but it does allow the site to be taken into account. Here, that should be dispositive. All right. If you'd like to say a little rebuttal, that's fine. Thank you. Mr. Zimmerman. Thank you. Good morning. May it please the Court. I'm Mark Zimmerman for National Union. I would like first just to address your question about why there's no forum selection clause in the contract. I can't answer specifically for this contract, but most insurance policies don't have forum selection clauses. I would suggest that one of the reasons is that over the course of the past years, the past decades, a choice of law jurisprudence has developed in the states around the country and that insurance companies and insurers and parties feel that that provides the predictability and the certainty and the uniformity of dealing with conflicts of laws that enables them to go about their business and issue policies without a forum selection clause. You mean the development of these common forms that are used? Yes. And I'm not suggesting nor can I say that there's a specific link, but I would suggest that there is a very extensive jurisprudence of choice of law and the restatement provisions themselves talk and speak to uniformity, predictability, developing constructs that allow for consistency across all of the states. And I think that that does inform the decision of insurance companies and parties not to include these forum selection clauses. In terms of choice of law, I would like to sort of wade into the thicket here, into the principal location of the insured risk analysis. And the briefs talk extensively about the international context and the extent to which those have to be assessed. And I would submit that when you look at the restatement provisions and when you look at the body of case law from Indiana, there's nothing in either of those that requires or mandates that international context be assessed and evaluated. Well, you say there's movement toward uniformity and clarity and so on and choice of law. But what exactly is the clear choice of law provision that governs here? Well, there is no choice of law provision here. Oh, great. Okay. So what were you talking about when you say that choice of law principles, even though they're state, not national, they're so clear, they've evolved such uniformity and so on that you don't need to write a sentence in your contract which says, yeah, if there's a lawsuit, the law that applies is Indiana, you know? Well, the decision was made by National Union and, frankly, insurance companies. I mean, I sign publication contracts, right? I get a contract from a publisher to publish a book. And it says that in the event that there is a lawsuit between me and the publisher, which, of course, there would never be, but if there is, I have to litigate it in, you know, Middlesex County in Massachusetts, right? Now that's a lot clearer than saying, well, you know, sue me in Massachusetts or something and then they'll look at Massachusetts law and how that conforms to the law and the restatement and other states and so on. Ridiculous. So your problem is that choice of law itself has been extremely mushy. You know, as I said, you're doing what you have to do in that this was brought in Indiana. We need to see where Indiana would point for the substantive law. But your whole problem with these uniform policies is that states interpret the words differently. We also have a uniform commercial code, and maybe some states interpret 2207 to mean one thing and another state interprets 2207 to mean something else. And so this happens to be one of the rare cases where two different states have come to different authoritative interpretations of this uniform language. So it leaves us trying to sort this mess out. You know, as you know, in the history of conflicts, there was a time that there were just some clear rules and people thought they didn't make any sense because they didn't, you know, so we came up with the second restatement, and that's what the state Supreme Courts want to use, but we're the ones who have to make some sense of this. So I guess I'm very interested in your ideas about how one does that. Well, I think that the starting point for making sense of it is the passage in the Standard Fusilier case about looking and assessing the overall numbers and quality of the contacts, and that is a construct that was reached by the Indiana Supreme Court. I would note that the Indiana Supreme Court cited to this circuit's opinion in the Nautilus case where that same principle and that same construct was used to evaluate the contacts. Now, I would submit that the restatement 193, principle location of the insured risk, aptly applies here because I think the contacts with Michigan are dominant, and I think that the district... So you read insured risk actually to mean insured risks plural, and you would look, I'm just trying to understand your position, would you look to all potential insured risks where Connersville is just one of a large number? Yes, I think that the restatement, the comments in the restatement, and I think that the body of case law in Indiana supports and almost compels that conclusion because you are measuring, you are looking at the subject matter of the contract, which is tantamount under Indiana to the location of the insured risk. You are assessing that prospectively, and if you are looking instead of at the whole potential panoply of risk, you're only going to try to focus on one, I think that runs you into being contrary to the dictates, for instance, of restatement of law 6, which emphasizes the need for uniformity, emphasizes the need for predictability and the ease of applying. But what do we do in a case like this where, frankly, the potential insured risks are sprinkled all over the world and it's fairly arbitrary to say they're mostly in Michigan or they're mostly in Mexico or they're mostly in Germany or Tokyo or wherever they may be. They're really everywhere, aren't they? So how can that help us decide anything? Well, I think that the Indiana choice of law jurisprudence provides that answer because the Indiana courts have consistently explored and looked in detail at the different locations where the insured conduct operations. And they have found that if a plurality of locations are located in a particular state, such as in the Coachman decision, then that supports and informs the conclusion that that state is the principal location of the insured risk. And I think that that construct supports the district court's ruling here. The district court ruled that Michigan was the principal location. But I think that even if the overall number and quality of contacts construct was used, that if you look at all five factors that are traditionally used, not just subject matter of the contract, but the domicile, state of headquarters of the parties, place of contracting, place of negotiation, place of performance, the substantial majority of those factors, when you look at the undisputed facts, all tend to favor Michigan over Indiana. And that's what the restatement construct is that you're looking and comparing the states involved. And here we have a dispute over whether Michigan law should apply or Indiana law should apply. And so at some point we have to draw ourselves away from looking at how many facilities there may be in Europe or Asia or Africa and look at what the dispute here is. Where are the contacts? How many contacts? What are the quality of the contacts between Michigan and Indiana? And I think here there really is no close call here. As has already been mentioned, there are many more locations of manufacturing operations in Michigan than any other state. And frankly, even if you look at it from Michigan as compared to any other location in the world, there are more locations in Michigan than any other specific jurisdiction in the world. And you saw in the briefs a reference to Mexico. But even with respect to Mexico, there's the same amount of manufacturing facilities, but there are more employees in Michigan. And when you look at, maybe it's not a tiebreaker, but you look at the special emphasis that the Indiana Supreme Court placed in Standard View Z on the principal location factor on where the insured was domiciled, that to me, if it's still on the fence, to me that tilts it over to Michigan being the principal location of the insured risk. Because that is where Visteon has always had its corporate headquarters and not just the U.S. headquarters, but also the world headquarters. And speaking with respect to this specific risk, there was discussion about TCE and whether one should look at what National Union might have known about the risk of TCE. The problem there is you're assessing the risks prospectively. That's what you're supposed to do under a choice of law. And that type of analysis requires a retrospective after the facts analysis and also runs counter to the Indiana Supreme Court's admonition that you need to have one law apply to the contract and not multiple state laws. And also I would submit that under the law of a specific risk you would definitely run a file of Restatement 6 which talks about the need for predictability, talks about the need for uniformity. If courts had to go back and assess after the fact what was known about a risk, that would definitely, I would submit, run a file of that. With respect to the... I keep coming back to my puzzle. You could have a form selection clause which would say if you want to sue us, you have to come to Michigan. Or you could have just a choice of law provision, right? Any litigation arising under this insurance contract will be resolved under Michigan law. I don't understand why you think that somehow that would be more complicated than forcing courts to go through this extraordinary mush of choice of law principles. Well, it may be less complicated to do what you are suggesting could be done. And I don't have a specific answer as to why this particular policy doesn't... Has the National Union tried to do that? One thing that crossed my mind is that maybe state insurance regulators have resisted a choice of law clause. Has the National Union encountered that problem? You know, I cannot specifically answer that. I don't know if there has been any specific resistance to that that the National Union has experienced. Well, if you don't know one way or the other... I do not know one way or the other. But I would also suggest this with respect to putting in a form selection clause. That, I believe, would be tough to negotiate across the body of insurance policy. I know that it is often fashionable for policyholders to say that policies are not negotiated. But if one is attempting to put a form selection clause in a policy that says New York law will apply or some law will apply, and your business is centered somewhere else, I would suggest that sophisticated insurers, corporate insurers, they're going to tell their broker, find me a policy that doesn't have a form selection clause. So that potentially, if some risk leads to a claim that I'm not bound by the particular state law. And then with respect to the pollution exclusion issue, we submit that the district court correctly ruled that the pollution exclusion bars coverage here. There's no dispute that this is a pollution liability case and there's no dispute that, with the exception of the argument that the products and completed operations exception somehow applies, that this would be excluded. And we would submit that, based on the body of the case law, including that that was cited and relied upon by the district court, as well as the undisputed facts showing that these TCE releases occurred during manufacturing operations. This is not a situation where the release, the accident, the occurrence happened after manufacturing operations were completed. In light of that undisputed, of those undisputed facts, we submit that... Well, isn't the reality, Michigan is an industrial state, so they're happy to have, you know, no lawsuits for pollution. Indiana is more rural. So don't you have just a clash of policies? You know, one state more environmentally oriented, one more industrial? Do you know what's involved? Well, I don't know if I would fully agree that Indiana's more rural as compared to Michigan overall, but I think that the... that industrial policies and environmental policies, certainly I have not seen anything in statutes or case law or legislative policy that would suggest that there's a fundamental difference between the two. But I would also submit that whether or not there is some difference, to me, is not probative of what state law should be applied. And that's where, again, we go to the restatement, to Section 188 for the principles dealing with contracts, to 193 for insurance contracts, to the overarching principles in Restatement 6, all as filtered through the choice of law jurisprudence of the Indiana courts, which time and time again have shown a willingness, even in the instances where risks are scattered, where risks are spread throughout multiple jurisdictions, they have shown a willingness to look, to look at the specific facts, to look at how many locations are there, what about the employees, how do you compare the numbers of employees, what about sales, if sales is known. They have shown a willingness, and when you look at the Dana case, that was a case where there was a reference to the fact that Dana had international operations, and yet when they analyzed the choice of law factors, they only looked at the domestic factors. But the Indiana body of case law have shown a willingness to look very carefully at the choice of law factors and what is the principal location of the insured risk. And when you look at those decisions, Standard Fusee, Coachman, RectoSilfoam, these are all decisions that provide ample support for what I think was already referenced, the sensible decision of district court to say that Michigan law properly applies here. And when you look at the overall number and quality of the context, which is the construct that this circuit has used, Standard Fusee also embraced, you see the dominant context of Michigan as compared to Indiana. You see the fact that in the domicile of the parties, this is located in Michigan. You see the place of contracting. Even if that factor is not giving a lot of weight, you see the fact that the insurance communications were coming out of Michigan, or at least originating out of Michigan, evidence that the policies were maintained in Michigan, the risk management department, the department that was responsible for dealing with insurance coverage worldwide, they were located in Michigan. And Indiana speaks of the most intimate context, what state has the most intimate connection with the facts, and the facts here ultimately go to the contract. We would submit that the facts strongly support the application of Michigan law, and we would ask that the district court's judgment finding Michigan law applies be affirmed, as well as the district court's judgment that the pollution exclusion applies, and that the products completed operations exception does not. Thank you. Thank you. Anything further, Mr. Pluse? Thank you. I wanted to follow up on the question that you just asked about policies, relative policies of Indiana and Michigan. Those are important. Section 6 makes it clear that not only the form of the relative jurisdictions, the jurisdictions you have some interest in, which in this case Indiana and Michigan, but also the interest of the forum. And Indiana, it's not so much industrial versus rural as it is in this case, we're also the protection of the environment, the cleanup of the environment, the protection of the victim. All of those things are worth consideration in a choice of law, which is really, again, not a matter of counting how many this or that's there are, but using those factors as a prism to try to hold up to the decision you've got to make to decide which state's law does it make the most sense to apply. And here, with all respect to the district court, I think it makes sense for Indiana law to apply because of the factors we selected to try to make this decision when the parties don't have a choice of a law clause, place of performance is the one that consistently, every one of the Indiana courts has said, place of performance is where the money is to be put to use. And if that's accidental in the sense of the first claim that comes up, that's the way it is sometimes. Sometimes these cases get, if it was in a different jurisdiction or maybe two claims at once or maybe multiple claims, that's an important point. Courts generally treat single-site situations like this one differently than they do multiple-site issues like, for example, in the Dana case. I should say that none of the Indiana cases, I've been counsel of record actually on most all of those, Dana, Erectus, Summit, and others, all of those cases have not involved a situation like this one where there's such a disparity between the domestic and foreign connections of the companies, as there is here. And that's why this factor really does cut that way. And the only other factor the court looked at below with respect to the choice of law that it said favored Michigan was the location of the parties. And as we point out in our brief, under Coachman, the court made an error there by counting the citizenship of both and location of both the subsidiary as well as the parent company. I think your time is up, so thank you very much. Thank you. Thanks to both counsel. We will take this case under advisement.